IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL VANDER VENNET, PATRICK )
BRACEY, LORI ESTELL, HARRISON, )
LORI LANGER, RANDY MYERS, )
GARY SEVERS, ERIC SKARPAC, )
JOHN TAMEL, KARIN ODDESN-TAYLOR, )
MICHAEL THRASHER, and ANGELA )
WHITE, and other similarly )
situated persons, )
)
          Plaintiffs, )
)
    v. )    No. 05 C 4889
)
AMERICAN INTERCONTINENTAL )    Judge William T. Hart
UNIVERSITY ONLINE, CAREER )
EDUCATION CORPORATION, and )
STEVE FIRENG, an individual, )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs allege that they were employed in
telemarketing positions for defendant American Intercontinental
University Online ("AIU"). Also named as defendants are AIU's
corporate parent Career Education Corporation ("CEC") and Steven
Fireng, who is alleged to be an officer and employee of both
corporate defendants. All three defendants are alleged to be
"employers" as that term is used in the three statutes upon which

plaintiffs base their claims. Plaintiffs allege that defendants wilfully failed to pay them overtime in violation of the Fair Labor Standards Act ("FLSA"), 219 U.S.C. § 213(a)(1); the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4(A); and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/4.[1]

CEC is a nationwide, for-profit education institution. CEC has "brick and mortar" schools that are not the subject of this lawsuit. AIU is a CEC subsidiary that provides undergraduate and graduate educational programs via the Internet. Twelve plaintiffs affirmatively joined in this lawsuit.[2] All the plaintiffs worked as admissions advisors for AIU for various periods of time from as early as March 2002 until as late as November 2004. With one possible exception, none of the eleven remaining plaintiffs are currently employed by AIU.[3] As admissions advisors, plaintiffs essentially were telemarketers

---

[1]The IWPCA claim is based on an alleged contractual obligation to pay the overtime.

[2]One plaintiff, Tracy Harrison, recently settled her FLSA claim against AIU as part of a settlement of employment discrimination claims she had against AIU and CEC. Since the settlement has been approved, Harrison is no longer a plaintiff in this lawsuit.

[3]Plaintiff Lori Langer is alleged to have been on a disability leave of absence since December 2003. It is not expressly alleged whether she is still considered to be an employee while on such leave. It is clear that she is not alleged to have been an active employee as of the November 2, 2005 filing of the First Amended Complaint.

attempting to sell prospective students on enrolling in AIU. AIU admissions advisors worked in teams of approximately 25 employees. Teams were within a management structure that included senior admissions advisors, assistant directors of admissions, and directors of admission. The twelve plaintiffs are alleged to have been assigned to at least ten different teams. Defendant Fireng allegedly supervised the daily operations of AIU, but defendants dispute whether he was involved in supervising the daily activities of admissions advisors.

Presently pending is plaintiffs' motion to send notice to an FLSA opt-in class as provided for in 29 U.S.C. § 216(b). See generally Nunez v. Pizza Nova, Inc., 2003 WL 23150111 *1 (N.D. Ill. Dec. 30, 2003). Defendants oppose that motion on three grounds. Relying on In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 333 F.3d 763 (7th Cir. 2003) ("Bridgestone II"), defendants contend that the denial of class certification in a similar state court case precludes plaintiffs from requesting § 216(b) class notice in a successive case such as the present one. Alternatively, defendants contend that a § 216(b) class should be denied because, based on the state court ruling, plaintiffs are collaterally estopped from asserting facts necessary to support a § 216(b) class. To the extent those arguments fail, defendants contend this is an inappropriate case for sending notice to an opt-in class.

Federal Rule of Civil Procedure 23 does not apply to the present case. Any collective action[4] is limited by the provision of 29 U.S.C. § 216(b) which requires that any plaintiff joined in this action consent to be a plaintiff, that is, any additional plaintiffs must opt in. King v. General Electric Co., 960 F.2d 617, 621 (7th Cir. 1992); Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1043-45 (N.D. Ill. 2003). In appropriate circumstances, the court may order that notice be sent to potential class members advising them of the option of joining in the case. See Woods v. New York Life Insurance Co., 686 F.2d 578, 580 (7th Cir. 1982). Generally, to be entitled to have such notice sent, plaintiffs first must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Flores, 289 F. Supp. 2d at 1044 (quoting Taillon v. Kohler Rental Power, Inc., 2003 WL 2006593 *1 (N.D. Ill. April 29, 2003)). See also Infantino v. Martam Construction, Inc., 2005 WL 3132362 *1 (N.D. Ill. July 18, 2005); Veerkamp v. U.S. Security Associates, Inc., 2005 WL 775931 *2 (S.D. Ind. March 15, 2005); Nunez, 2003 WL 23150111 at *1; Champneys v. Ferguson Enterprises, Inc., 2003 WL 1562219 *4 (S.D. Ind. March 11, 2003); Bontempo v. Westwood One Broadcasting Services,

---

[4]Actions pursuant to § 216(b) are often referred to as "collective" or "representative" actions, not "class" actions. See Veerkamp v. U.S. Security Associates, Inc., 2005 WL 775931 *1 (S.D. Ind. March 15, 2005).

- 4 -

Inc., 2002 WL 1925911 *1 (N.D. Ill. May 3, 2002); Garza v. Chicago Transit Authority, 2001 WL 503036 *2 (N.D. Ill. May 8, 2001). The other employees need not be in the same identical job or situation. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir.), cert. denied, 519 U.S. 982, 987 (1996); Champneys, 2003 WL 1562219 at *5; Bontempo, 2002 WL 1925911 at *1; Garza, 2001 WL 503036 at *3; Flavel v. Svedala Industries, Inc., 875 F. Supp. 550, 553 (E.D. Wis. 1994). Unless defendants admit in their answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing. Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy.

There are other pending cases involving the issue of overtime pay for AIU admissions advisors for periods of time that overlap with the present case. None of the named plaintiffs in those cases are plaintiffs in the present case, but all are represented by the same attorneys that represent the plaintiffs in the present case. In a case pending in this court, two plaintiffs have brought individual claims for violation of the FLSA, IMWL, and IWPCA. See Skelton v. AIU, 382 F. Supp. 2d 1068 (N.D. Ill. 2005) (No. 03 C 9009). In Skelton, there has been no motion to send notice to potential opt-ins. The Skelton case had

- 5 -

been set for trial in December, but recently had a settlement conference.[5] In the Circuit Court of Cook County, Illinois, a case is pending in which three plaintiffs claim violations of the IMWL and IWPCA. See Finnigan v. AIU, No. 03 CH 18335 (Cir. Ct. Cook Cy., Ill., Chancery Div.).[6] In that case, the named plaintiffs moved for class certification under the Illinois Code of Civil Procedure. See 735 ILCS 5/2-801 to 2-806.[7] In an order dated June 17, 2005,[8] class certification was denied on the ground that the § 2-801(2) requirement that common questions predominate was not satisfied.[9] Finnigan Order at 4-6. The parties agree that all the plaintiffs in the present class were part of the class proposed in Finnigan, but never certified.

---

[5]As of the morning of December 22, 2005, the docket sheet in Skelton, did not contain any entry following the December 16, 2005 settlement conference.

[6]There is no indication from either side in the present case that any judgment has been entered in Finnigan. The limited docket information available on Westlaw indicates that the last order in the case is that there was a continuance to January 19, 2006.

[7]These Rules are similar, but not identical, to Fed. R. Civ. P. 23.

[8]Both parties provide a copy of this order as an exhibit to one of their briefs. This order will be referred to as: "Finnigan Order."

[9]Unlike the Federal Rules of Civil Procedure, the Illinois Code of Civil Procedure makes predominance a requirement for all class actions. Compare Fed. R. Civ. P. 23(a)(3) and 23(b)(3) with 735 ILCS 5/2-801(2).

- 6 -

Based on the Finnigan Order, defendants contend that issuing an opt-in notice is foreclosed in the present case.

Contrary to defendants' contention, the Seventh Circuit's Bridgestone II decision is not controlling as to the present case, nor is collateral estoppel[10] otherwise applicable. In Bridgestone, the United States District Court for the Southern District of Indiana had certified a nationwide class for a products liability case involving allegedly defective tires. In an initial interlocutory appeal, the Seventh Circuit held that certification of a nationwide class was improper because the laws of various states would apply to the products liability claims, thereby making a single nationwide class unmanageable. In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002), cert. denied, 537 U.S. 1105 (2003). The court also indicated that it would be improper to certify multiple subclasses based on where the accident occurred. See id. at 1018-20. The district court's certification order, which involved two classes, was reversed. Id. at 1021.

Thereafter, plaintiffs pursued numerous class actions in various states and at least one state court certified a nationwide class. Defendants moved the Southern District of Indiana to enjoin plaintiffs in the other cases from pursuing any class action whatsoever. The Southern District of Indiana denied

---

[10]Collateral estoppel is also known as issue preclusion. This opinion will use the term collateral estoppel since that is the term generally used by the parties in this case.

the motion for an injunction. See Bridgestone II, 333 F.3d at 765. In a second appeal, the Seventh Circuit held that collateral estoppel based on the federal court denial of class certification would have a limited preclusive effect on class certification motions brought in other courts by putative members of the classes that were not certified in the federal action and that the Anti-Injunction Act, 28 U.S.C. § 2283, did not bar the requested injunctive relief. Bridgestone II, 333 F.3d at 766-69. In determining the preclusive effect of the denial of class certification, the Seventh Circuit applied federal law regarding the preclusive effect of a federal court ruling. See id. at 767. Under federal law, the Seventh Circuit held that preclusion must be based on a "final judgment," but that finality is broadly defined for purposes of collateral estoppel. A "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded a conclusive effect." Id. (quoting Restatement (Second) of Judgments § 13 (1980)). The Seventh Circuit held that a class certification ruling that has been addressed in an interlocutory appeal and for which certiorari has been denied is "sufficiently firm." Bridgestone II, 333 F.3d at 767. The Seventh Circuit also held that, under federal collateral estoppel law, a denial of class certification may have a preclusive effect as to putative class members so long as counsel for the proposed class provided adequate representation regarding class certification

issues. See id. at 768-69. The Seventh Circuit held that the collateral estoppel effect of the denial of class certification in Bridgestone was limited to precluding certification of a nationwide class in subsequent cases brought by putative class members; it did not preclude certifying a class limited to a single state. Bridgestone II, 333 F.3d at 769. See also Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 579 (N.D. Ill. 2005).

Defendants characterize Bridgestone II as being a special rule prohibiting successive motions for class certification, even by different named plaintiffs. However, no such broad rule is stated. See Carnegie v. Household International, Inc., 376 F.3d 656, 663 (7th Cir. 2004), cert. denied, 125 S. Ct. 877 (2005); Oshana, 225 F.R.D. at 579. Instead, Bridgestone II is a particularized application of federal collateral estoppel rules in the situation where class certification has previously been denied. See Carnegie, 376 F.3d at 662-63; Bridgestone II, 333 F.3d at 767-69. Thus, there is no basis for making separate arguments based on both Bridgestone II and collateral estoppel. The issue to consider is whether the collateral estoppel effect of the Finnigan Order precludes success on the § 216(b) collective action motion brought by plaintiffs in the present case. Bridgestone II is not controlling on that issue because Bridgestone II involved the preclusive effect of a federal judgment. See Bridgestone II, 333 F.3d at 767. Since defendants

presently invoke collateral estoppel based on a ruling in a state court case, Illinois law as to collateral estoppel must be applied. 28 U.S.C. § 1738; San Remo Hotel, L.P. v. City & County of San Francisco, Cal., 125 S. Ct. 2491, 2500 (2005); Heck v. Humphrey, 512 U.S. 477, 480 n.2 (1994); American National Bank & Trust Co. of Chicago v. Regional Transportation Authority, 125 F.3d 420, 430 (7th Cir. 1997).

"Collateral estoppel is an equitable doctrine and its application is governed by certain general principles. [The Illinois Supreme Court] has repeatedly held that the minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." Gumma v. White, 216 Ill. 2d 23, 833 N.E.2d 834, 843 (2005). Additionally,

> a prior judgment operates as an estoppel only regarding issues "actually litigated and determined and not as to other matters which might have been litigated and determined." (Emphasis in original.) Best Coin-Op, Inc. v. Paul F. Ilg Supply Co., 189 Ill. App. 3d 638, 661, 545 N.E.2d 481, 496 (1989). Moreover, the party against whom the estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier action, and "an injustice must not be done to him under the circumstances of the later case." Stone v. Salvage & Bridges Agency, Inc., 206 Ill. App. 3d

615, 620, 565 N.E.2d 318, 321 (1990); <u>Wolford v.
Owens-Corning Fiberglas Corp.</u>, 176 Ill. App. 3d
312, 314, 530 N.E.2d 721, 722 (1988).

<u>Hayes v. State Teacher Certification Board</u>, 359 Ill. App. 3d
1153, 835 N.E.2d 146, 155 (5th Dist. 2005), <u>appeal denied</u>, ___
Ill. 2d ___, ___ N.E.2d ___ (Dec. 1, 2005)

     Illinois law differs from federal law regarding the
"final judgment" requirement for applying collateral estoppel.
Illinois cases hold that this requirement is not satisfied until
the potential for appellate review has been exhausted.
<u>Ballweg v. City of Springfield</u>, 114 Ill. 2d 107, 499 N.E.2d 1373,
1375 (1986); <u>People v. Luedemann</u>, 357 Ill. App. 3d 411,
828 N.E.2d 355, 369 (2d Dist. 2005), <u>appeal allowed</u>, ___ Ill. 2d
___, ___ N.E.2d ___ (Sept. 29, 2005); <u>People v. Powell</u>, 349
Ill. App. 3d 906, 812 N.E.2d 636, 639-40 (2d Dist. 2004);
<u>Terry v. Watts Copy Systems, Inc.</u>, 329 Ill. App. 3d 382, 768
N.E.2d 789, 798 (4th Dist. 2002); <u>People v. One 1984 Pontiac
Parisienne Sedan</u>, 323 Ill. App. 3d 717, 754 N.E.2d 358, 362
(2d Dist. 2001); <u>Luckett v. Human Rights Commission</u>, 210
Ill. App. 3d 169, 569 N.E.2d 6, 10 (1st Dist. 1989), <u>appeal
denied</u>, 141 Ill. 2d 543, 580 N.E.2d 117 (1991), <u>cert. denied</u>,
502 U.S. 1113 (1992). <u>See also</u> <u>Beckett v. H&R Block, Inc.</u>, 306
Ill. App. 3d 381, 714 N.E.2d 1033, 1038 (1st Dist. 1999).[11]  Ten

---

     [11]In <u>Beckett</u>, collateral estoppel was based on a federal
judgment for which all appeals had already been exhausted.
However, in <u>dictum</u>, the court cited <u>Ballweg</u> in stating:  "The

years ago, the Seventh Circuit questioned whether Ballweg and its progeny (some of which had extended Ballweg's holding to res judicata (claim preclusion)) is controlling Illinois precedent because Ballweg is inconsistent with the rule applied in most jurisdictions and also inconsistent with a 1948 Illinois Supreme Court res judicata case. See Rogers v. Desiderio, 58 F.3d 299, 301-02 (7th Cir. 1995); State Life Insurance Co. v. Board of Education of Chicago, 401 Ill. 252, 81 N.E.2d 877 (1948). See also Illinois Founders Insurance Co. v. Guidish, 248 Ill. App. 3d 116, 618 N.E.2d 436, 440 (1st Dist. 1993); Shaw v. Citizens State Bank of Shipman, 185 Ill. App. 3d 79, 540 N.E.2d 1132, 1134 (4th Dist. 1989). State Life holds that a decision based on res judicata will not be overturned when the prior case upon which res judicata was based is vacated on appeal or otherwise, thus implicitly holding that the possibility or pendency of an appeal does not prevent a judgment from having a res judicata effect. Illinois Founders and Shaw cite to State Life in holding that, where res judicata would otherwise apply and the prior decision is on appeal, the latter case generally should be stayed until the appeal is resolved so as to prevent the inconsistency that occurred in State Life. In Rogers, a state court case that would have a res judicata effect was pending in the Illinois Appellate Court. The Seventh Circuit stated that, it could not be

decision is final, in that the potential for appellate review has been exhausted." Beckett, 714 N.E.2d at 1038.

determined whether, under Illinois law, a pending appeal destroys the res judicata effect of a Illinois state court judgment. In light of State Life, though, the Seventh Circuit held that the federal district court should stay its proceeding until the state court appeal was resolved.

The present situation is distinguishable from Rogers. In the ten years following Rogers, two of Illinois's Appellate Court Districts have continued to follow Ballweg, one Appellate Court District has favorably cited it in dictum, and no published Illinois court decision has followed State Life nor questioned Ballweg. Also, no published Illinois court decision has cited the discussion in Rogers. Moreover, Rogers involved res judicata and, as noted in Rogers, some Illinois Appellate Court cases had followed State Life in res judicata cases while others had extended Ballweg to res judicata. The collateral estoppel cases, however, have consistently followed Ballweg. Further, this is not a situation where a judgment has been entered in the trial court and that judgment is on appeal. The Finnigan case is still pending in the Circuit Court of Cook County with no judgment having yet been entered so the denial of class certification has not even become appealable yet. See Ill. S. Ct. R. 303, 307. Illinois case law supports that a ruling in a case that has not yet become appealable is not a final judgment that can be a basis for applying collateral estoppel in another case. 1984 Pontiac Parisienne, 754 N.E.2d at 762. The Finnigan Order is not yet a

- 13 -

ruling upon which collateral estoppel may be based. Therefore, the request to send opt-in notices must be considered on its merits.

Even if the _Finnigan_ Order should be considered a final judgment that can support collateral estoppel, it would not preclude pursuit of plaintiffs' collective action motion. Any collateral estoppel effect of the _Finnigan_ Order would be limited to the issues actually litigated and rulings that were necessary and essential to that Order. _People v. Jones_, 207 Ill. 2d 122, 797 N.E.2d 640, 649 (2003); _Hayes_, 835 N.E.2d at 155; _Terry_, 768 N.E.2d at 796. The only issue actually decided by the state court was that class certification under Illinois Civil Procedure Rule 2-801 was not appropriate because common class questions did not predominate. There was no finding that common questions did not exist, only a finding that the common questions did not predominate. _Finnigan_ Order at 4-6. Predominance of common questions is not a requirement for a § 216(b) collective action. _Grayson_, 79 F.3d at 1096; _Flavel_, 875 F. Supp. at 553.[12] At most, whether individual questions will predominate is one factor to weigh and balance with others in determining whether the

---

[12]Some courts have applied the predominance requirement of Fed. R. Civ. 23(b)(3) to a § 216(b) collective action. _See, e.g._, _Bayles v. American Medical Response of Colorado, Inc._, 950 F. Supp. 1053, 1060-61 (D. Colo. 1996) (cited by defendants). As was set forth above, the Seventh Circuit has held that Rule 23 does not apply to a § 216(b) collective action. _King_, 960 F.2d at 621; _Woods_, 686 F.2d at 579-80.

- 14 -

plaintiffs who have joined in a § 216(b) collective action are similarly situated. See, e.g., Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1103-05 (10th Cir. 2001), cert. denied, 536 U.S. 934 (2002).

In arguing that the issues are identical in both the present case and the Finnigan case, defendants mistakenly rely on res judicata cases. See Def. Answer Br. at 9 (citing Canady v. Allstate Insurance Co., 282 F.3d 1005, 1015 (8th Cir. 2002); NAACP, Minneapolis Branch v. Metropolitan Council, 125 F.3d 1171, 1174 (8th Cir. 1997), vacated & remanded, 522 U.S. 1145, prior opinion reinstated, 144 F.3d 1168 (8th Cir.), cert. denied, 525 U.S. 826 (1998)); Def. Sur-Reply Br. at 6 (same). Under Illinois and federal law (which defendants cite), res judicata is broader than collateral estoppel in that there need only be identical causes of action, not identical factual or legal issues. See Benton v. Smith, 157 Ill. App. 3d 847, 510 N.E.2d 952, 954 (1st Dist. 1987); Lester v. Arlington Heights Federal Savings & Loan Association, 130 Ill. App. 3d 233, 474 N.E.2d 33, 37 (2d Dist. 1985); Hanna v. City of Chicago, 2003 WL 22024987 *2 (N.D. Ill. Aug. 27, 2003); Perry v. Sheahan, 222 F.3d 309, 318 (7th Cir. 2000) (quoting Okoro v. Bohman, 164 F.3d 1059, 1063 (7th Cir. 1999)). Also, defendants ignore that a collateral estoppel case which they cited in their answer brief limits its application to the specific factual issues decided in the prior case, that Rule 23 class certification was not

- 15 -

appropriate because the named plaintiff purchased his stock
outside the appropriate time period, he was not an adequate
representative, and he did not satisfy typicality.  See In re
Keck, Mahin & Cate, 237 B.R. 430, 434-35 (Bankr. N.D. Ill.
1999), aff'd, 253 B.R. 530, 533 (N.D. Ill. 2000).  Similarly,
other cases cited in defendants' Sur-Reply at 6 apply collateral
estoppel based on specific findings in the prior case that
negated elements necessary to claims in the later case.  See
Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522,
531-32 (7th Cir. 1985); Wozniak v. DuPage County, 845 F.2d 677,
683 (7th Cir. 1988).  In their sur-reply, defendants also cite
dictum in Lee v. Criterion Insurance Co., 659 F. Supp. 813,
822-23 (S.D. Ga. 1987).[13]  Lee is distinguishable in that it
involved denials of class certification under Georgia and
federal civil rules that were not materially different.  Id. at
822.  Here, § 216(b) and R 2-801 involve different prerequisites
for the application of each.  Also, other cases hold that the
application of collateral estoppel based on a prior denial of
class certification must be limited to the actual basis for
denying class certification.  See, e.g., Nagel v. ADM Investor
Services, Inc., 1999 WL 1212853 *3 (Ill. Cir. Ct. Dec. 16,
1999); Bridgestone II, 333 F.3d at 769; Oshana, 225 F.R.D.

---

[13]"[T]he Court's ruling with respect to defendant's
second argument renders moot the question whether sanctions
should be imposed on plaintiff's counsel for his inclusion of
class action allegations."  Lee, 696 F. Supp. at 822.

at 579; Keck, 253 B.R. at 533. Moreover, Illinois law is clear
that collateral estoppel must be limited to the particular issue
that was actually determined in the prior case. Jones,
797 N.E.2d at 649; Hayes, 835 N.E.2d at 155; Terry, 768 N.E.2d
at 796.

In any event, as previously discussed, there is no final
judgment upon which collateral estoppel may be based. Therefore,
any fact related to permitting a § 216(b) collective action,
including predominance or commonality of issues, must be
considered de novo.

Courts have adopted a two-step procedure for § 216(b)
cases. As previously set forth, the initial step in permitting a
collective action is to decide whether to issue an opt-in notice
based on whether the plaintiffs can make a modest factual showing
of being similarly situated. After discovery has been completed,
the issue of permitting the collective action to continue may be
raised by defendants at which point it will be considered whether
the plaintiffs who have joined in the case at that point are all
similarly situated. At the second stage, the issue will be
decided on a more complete factual record and the burden placed
on the plaintiffs will no longer be limited to a modest showing.
See Thiessen, 267 F.3d at 1102-03; Flores, 289 F. Supp. 2d at
1045 (quoting Belbis v. County of Cook, 2002 WL 31600048 *4 (N.D.
Ill. Nov. 18, 2002)); Infantino, 2005 WL 3132362 at *1; Veerkamp,
2005 WL 775931 at *2. Defendants contend that this court should

- 17 -

proceed directly to the second step because, in _Finnigan_,
extensive discovery was taken on the class certification issue,
including depositions of a number of plaintiffs in the present
case, and the _Finnigan_ discovery is already available to both
sides in the present case.  While the availability of that
discovery provides some support for defendants' position, other
factors counsel against leaping directly to the second step.  The
discovery in _Finnigan_ apparently was directed to the class
certification issue only.  Therefore, the parties do not yet have
all the evidence that would be available at the conclusion of
discovery in the present case.  More importantly, it is not yet
known who else may attempt to join this lawsuit.  It may be that
few others choose to opt in.  Or it may turn out that it will be
appropriate to continue with some, but not all, of the additional
plaintiffs that opt in.  Or it may turn out that it is
appropriate to have subclasses of plaintiffs or a few separate
law suits.  None of that can be known at this time.  Any second-
step determination is best made in light of who is actually in
the case.  See _Rochlin v. Cincinnati Insurance Co._, 2003 WL
21852341 *16 (S.D. Ind. July 8, 2003).  The "modest" factual
showing standard will still be applied, but it will be applied in
light of the record that is before the court on the pending
motion.  Thus, plaintiffs must at least "modestly" overcome any
contrary evidence submitted by defendants.

- 18 -

To proceed on a § 216(b) collective action, there must be
similarly situated employees, which usually includes being
subjected to a common policy. This standard has been held to be
less stringent than that required for joinder of parties under
Fed. R. Civ. P. 20(a) ("any right to relief . . . in respect of
or arising out of the same transaction, occurrence, or series of
transactions or occurrences and if any question of law or fact
common to all these persons will arise in the action"). Grayson,
79 F.3d at 1096; Hipp v. Liberty National Life Insurance Co., 252
F.3d 1208, 1219 (11th Cir. 2001), cert. denied, 534 U.S. 1127
(2002); Mahaffey v. Amoco Corp., 1997 WL 24712 *1 (N.D. Ill.
Jan. 17, 1997); Flavel, 875 F. Supp. at 553.  There must be a
demonstrated similarity among the situations of each plaintiff
beyond simply claiming that the FLSA has been violated; an
identifiable factual nexus that binds the plaintiffs together as
victims of a particular violation of the overtime laws generally
must be present.  Garza, 2001 WL 503036 at *2; Mahaffey, 1997 WL
24712 at *1 (quoting Heagney v European American Bank, 122 F.R.D.
125, 127 (E.D.N.Y. 1988)); Sheffield v. Orius Corp., 211 F.R.D.
411, 416 (D. Or. 2002). A unified policy, plan, or scheme,
though, is not necessarily required to satisfy the similarly
situated requirement, especially if a collective action would
promote judicial economy because there is otherwise an
identifiable factual or legal nexus. See Grayson, 79 F.3d at
1095; Hipp, 252 F.3d at 1219; Mielke v. Laidlaw Transit, Inc.,

313 F. Supp. 2d 759, 763 (N.D. Ill. 2004); Sheffield, 211 F.R.D.
at 416; Reed v. Mobile County School System, 246 F. Supp. 2d
1227, 1234 n.11 (S.D. Ala. 2003); Marsh v. Butler County School
System, 242 F. Supp. 2d 1086, 1092-93 (M.D. Ala. 2003).  It
should also be recognized that § 216(b) applies to statutory
claims other than FLSA claims.  Section 216(b) also applies to
discrimination cases under the Age Discrimination in Employment
Act ("ADEA"), see 29 U.S.C. § 626(b), and Equal Pay Act, see 29
U.S.C. § 206(d); Lifrak v. New York City Council, 389 F. Supp. 2d
500, 503 (S.D.N.Y. 2005).  Many of the reported cases involving
collective actions pursuant to § 216(b), including many of the
cases cited herein, are ADEA cases.  Whether a defendant was
motivated by a discriminatory animus, as is generally required
for an age discrimination claim, is often an individualized,
fact-intensive inquiry.  An FLSA claim generally will not involve
the same sort of issues as to a defendant's mental state as does
an ADEA claim and therefore an FLSA case would be more likely to
be amenable to a collective procedure than an ADEA case.  In an
ADEA case, whether there is a common practice or policy may be
particularly important because it may take certain individualized
motivation issues out of the case.  See, e.g., Thiessen, 267 F.3d
at 1105-08 (in decertifying an ADEA collective action, the
district court failed to take into account that plaintiffs were
pursuing a pattern-or-practice claim that alters the burdens on
the parties).

Factors that may be considered in determining whether plaintiffs are similarly situated include: (a) similarities and differences in the employment and other factual settings of the various plaintiffs, including whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decisionmakers, or allege different types of violative conduct; (b) the extent to which the plaintiffs will rely on common evidence; (c) defenses available to defendants and whether the defenses are individual to each plaintiff; and (d) fairness and procedural considerations, including whether a trial may be coherently managed in a way that will not confuse the jury or unduly prejudice a party. See Thiessen, 267 F.3d at 1103; Mielke, 313 F. Supp. 2d at 762; Koren v. SUPERVALU, Inc., 2003 WL 1572002 *16 (D. Minn. March 14, 2003); Reed, 246 F. Supp. 2d at 1232 (quoting Stone v. First Union Corp., 203 F.R.D. 532, 542-43 (S.D. Fla. 2001)); Wynn v. National Broadcasting Co., 234 F. Supp. 2d 1067, 1083-84 (C.D. Cal. 2002).[14]

Plaintiffs present evidence to support the following. AIU admissions advisors call prospective students and solicit

---

[14]Although some courts refer to these factors as being pertinent to the analysis applied at the second-step, there is no good reason to distinguish between the factors that may be considered at the first and second step. The primary difference between the two stages of the litigation is the level of proof required. Also, at the first step, information about particular factors may not be available at all or may not be very well developed.

them to enroll at AIU. Admissions advisors had sales goals they were to meet. Based on his experience, defendant Fireng estimates that it takes an average of 100 dialed calls plus a certain number of follow ups to enroll one student. Taking Fireng's estimates as accurate, it would take more than a 40-hour week to meet the goals. Plaintiffs point to the deposition testimony or affidavits of nine admissions advisors who state that they were told not to report overtime on their timesheets, including being required to change timesheets to remove reported overtime. Additional admissions advisors state they were not compensated for overtime. One plaintiff testified that both her supervisor and Fireng instructed her that, if she could not complete her work in eight hours, she should work longer, but would not be paid overtime. Plaintiffs also present evidence that complaints were made to a number of management employees regarding unpaid overtime, including a management internal email acknowledging such reports.

Defendants contend that AIU has a written policy requiring that employees accurately report their time and that they will be paid for overtime that they work.[15] They contend

---

[15]No proper support is provided for this assertion. In their Answer Brief at 14, defendants cite to their Exhibits H and J, which are briefs filed in the Finnigan case, and do not cite to specific pages of those briefs. Defendants were granted leave to file an oversized answer brief. It is improper to further extend the size of a brief by wholly incorporating other briefs. See Albrechtsen v. Board of Regents of University of Wisconsin System, 309 F.3d 433, 436 (7th Cir. 2002), cert. denied, 539 U.S.

- 22 -

that any contrary instruction from individual supervisors would
have to be proven on an individualized basis and be based on
anecdotal evidence. Defendants contend that different team
supervisors acted differently regarding overtime, that different
employees interpreted supervisory statements concerning possible
overtime differently, and that some admissions supervisors
reported and were paid overtime. Defendants, however, provide
little support for these contentions. In two briefs, see Def.
Answer Br. at 14-17; Def. Sur-Reply at 13-15, the only actual
support that defendants cite for these propositions is the
deposition of plaintiff Gary Severs at 252 and 260-61. As of his
August 16, 2004 deposition, which was almost a year after the
Finnigan and Skelton cases were filed, Severs testified that the
current policy was that his supervisor did not explicitly tell
him to record all overtime, but implied that he should. He also
testified that he still did not record all his overtime in that
he would round down. Plaintiffs provide other portions of

_____

941 (2003); Fleming v. Kane County, 855 F.2d 496, 498 (7th Cir.
1988). Also, the court cannot be expected to search through two
entire briefs to find a citation supporting the fact that is
being stated. Even when defendants cite to specific pages of the
Finnigan briefs, see, e.g., Def. Sur-Reply at 13, they cannot
simply rely on factual assertions made in the other briefs. To
the extent the other briefs have citations to the record, the
citations are often simply to the exhibits submitted in Finnigan
which had different labels than the exhibits filed with the
present motions. A citation to paragraphs of "Exhibit A" in the
Finnigan case means nothing in the present case. See, e.g.,
Def. Sur-Reply at 13 (citing present Exh. H at 7, which cites
Finnigan Exh. A, J, K, & X).

- 23 -

Severs' deposition regarding prior experiences with not being
paid overtime.

Whether employees were told they should or should not
report overtime does not go to the issue of defendants' liability
for the overtime itself, although those facts may be relevant to
the additional claim that the failure to pay overtime was
willful. Even if an employee is not instructed to work overtime,
the employer will be liable to pay overtime if the employer knew
or should have known that the employee was actually working
additional hours. See Ladegaard v. Hard Rock Concrete Cutters,
Inc., 2004 WL 1882449 *4 (N.D. Ill. Aug. 18, 2004); O'Brien v.
Encotech Construction, 2004 WL 609798 *5-6 (N.D. Ill. March 23,
2004). Such knowledge on the part of direct supervisors or other
management employees will be imputed
to the employer. Id. Defendants do not contend that direct
supervisors were unaware of the work being performed and
plaintiffs present evidence that management officials were made
aware of unpaid overtime.

In any event, plaintiffs present evidence supporting the
existence of a widespread policy of admissions advisors working
uncompensated overtime, as well as evidence that management
officials, including Fireng, were aware of it. Although,
defendants contend that the policy widely varied from team-to-
team, they do not provide any substantial evidence to support
that contention. The claims of all plaintiffs would be based on

- 24 -

the simple theory that they worked hours for which they were not compensated. The employees that would be joined in this action all had the same job title and duties, and would be limited to those working at two locations in suburban Chicago. Notice would only go to admissions advisors whose employment overlapped with those already in the lawsuit, that is, those who worked as admissions advisors at some time between August 24, 2002[16] and November 1, 2004.[17] Even if some variations exist among plaintiffs that would require dividing the plaintiffs into subclasses, it would presently appear that judicial economy would still favor keeping the plaintiffs in a single case. At this stage of the litigation, all plaintiffs appear to be similarly situated.

Plaintiffs will be permitted to proceed on a collective action and a notice will be sent to potential opt-ins. Within 14 days, defendants shall provide plaintiffs with a list of names and addresses of all admissions advisors employed by AIU at its Hoffman Estates and Downers Grove locations from August 24, 2002 to and including November 1, 2004. Notice, substantially in the

---

[16]The beginning date is limited by the statute of limitations.

[17]This likely will include employees who also worked after November 1, 2004 and who may still be employees of AIU. Any such employees who join in the lawsuit would not be precluded from seeking relief for any unpaid overtime worked after November 1, 2004.

form appended hereto, shall be mailed out by no later than January 31, 2006.

IT IS THEREFORE ORDERED that plaintiffs' motion to send FLSA notice [5]. Within 14 days, defendants shall provide plaintiffs with a list of names and addresses of admissions advisors employed by AIU from August 24, 2002 to and including November 1, 2004. By January 31, 2006, plaintiffs shall mail out notice substantially in the form appended to today's memorandum opinion and order. All discovery is to be completed by June 16, 2006. A status hearing will be held on April 19, 2006 at 11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 22 , 2005

- 26 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL VANDER VENNET, PATRICK         )
BRACEY, LORI ESTELL, LORI LANGER,   )
RANDY MYERS, GARY SEVERS,           )
ERIC SKARPAC, JOHN TAMEL,           )
KARIN ODDSEN-TAYLOR, MICHAEL        )
THRASHER, and ANGELA WHITE,         )
and other similarly situated        )
persons,                            )
                                    )
                Plaintiffs,         )
                                    )
        v.                          )    No. 05 C 4889
                                    )
AMERICAN INTERCONTINENTAL           )    Judge William T. Hart
UNIVERSITY ONLINE, CAREER           )
EDUCATION CORPORATION, and          )
STEVE FIRENG, an individual,        )
                                    )
                Defendants.         )

---

## **IMPORTANT NOTICE OF YOUR RIGHT TO JOIN AS A PLAINTIFF IN A LAWSUIT SEEKING TO RECOVER OVERTIME WAGES UNDER THE FAIR LABOR STANDARDS ACT**

---

**TO:**   Present and Former Employees of **American Intercontinental University Online ("AIU")** Who Have Worked As An Admissions Advisor At Any Time From August 24, 2002 To November 1, 2004 Inclusive at AIU's Hoffman Estates and Downers Grove locations.

---

## 1. **INTRODUCTION**

The purpose of this Notice is to inform you of the existence of a collective action lawsuit, in which you may join as a plaintiff, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for joining in this lawsuit should you choose to do so.

## 2. **DESCRIPTION OF THE LAWSUIT**

Plaintiffs Paul Vander Vennet, Patrick Bracey, Lori Estell, Lori Langer, Randy Myers, Gary Severs, Eric Skarpac, John Tamel, Karin Oddsen-Taylor, Michael Thrasher, and Angela White, were formerly employed by AIU as admissions advisors. They have brought this lawsuit against Defendants AIU, Career Education Corporation, and Steve Fireng, on behalf of themselves and other past and present admissions advisors of AIU who have not been paid overtime wages for hours worked in excess of forty (40) hours a week.

The Fair Labor Standards Act requires that employees be paid one and one-half times their regular hourly wage for all work over 40 hours in any workweek. Plaintiffs claim that Defendants failed to pay them overtime, and further claim that the actions of Defendants were willful. Plaintiffs also seek an additional equal amount as liquidated damages and/or prejudgment interest, attorney fees, and costs. No trial date has yet been set in this case.

## 3. **WHO MAY JOIN THE LAWSUIT**

If you are a current or former employee of AIU who worked as an admissions advisor, and you believe that, some time on or after August 24, 2002, you were denied overtime pay despite working more than 40 hours in a week, you have a right to join this lawsuit.

## 4. **YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT**

If you believe that you were denied overtime pay, you may join this suit (that is, you may "opt in" to the lawsuit) by mailing or delivering the Consent To Become Party Plaintiff form (the

blue form attached to this Notice) to Plaintiffs' attorney at the following address:

AIU/CEC OVERTIME LITIGATION
c/o Robin Potter & Associates, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
312/419-1008 (phone)
312/861-3009 (fax)

Your completed and signed Consent form should be sent to the above address in sufficient time to have Plaintiffs' attorney file it with the federal court on or before April 14, 2006.  If you fail to return the Consent form to plaintiffs' counsel in time for it to be filed with the federal court on or before that deadline, you may not be able to participate in this lawsuit. That means you bear the risk of any non-delivery or delay in delivery of the Consent form.

If you file a Consent form, your continued right to participate in this lawsuit may depend upon a later decision by the District Court that you and other Plaintiffs are actually "similarly situated" in accordance with federal law.

## 5. **EFFECT OF JOINING THIS SUIT**

If you choose to join in the suit, you will become a Party Plaintiff in this case.  You will be required to participate in discovery proceedings, including providing information and appearing for a deposition if such is requested of you.  You may also be required to appear and testify at the trial of this case. In any event, if you choose to join this lawsuit, you will be bound by any judgment entered in the case, whether it is favorable or unfavorable.

## 6. **IF YOU CHOOSE NOT TO JOIN THIS SUIT**

If you choose not to join this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class.  If you choose not to join in this lawsuit, you are free to file your own lawsuit.

## 7. **NO RETALIATION AGAINST YOU IS PERMITTED**

Federal law prohibits Defendants from discharging you from employment or taking any other adverse employment action against you because you have exercised your legal right to join this

APPENDIX - 3

lawsuit or because you have exercised your rights under the Fair
Labor Standards Act.

## 8. **YOUR LEGAL REPRESENTATION IF YOU JOIN**

Plaintiffs' attorney, Robin Potter, will represent you should you
elect to join this lawsuit. Your attorney may be entitled to
receive the payment of attorney fees and costs from Defendants
should there be a recovery or judgment in your favor. If there
is no recovery or judgment in your favor, you will not be
responsible for any attorney fees, but you may be responsible for
certain costs of litigation.

## 9. **FURTHER INFORMATION**

Further information about this Notice, or the deadline for filing
a Consent form, or other questions about this lawsuit may be
obtained by writing or telephoning Plaintiffs' attorney at the
number and address stated above. Further information about this
lawsuit may also be obtained by reviewing the court file in the
Clerk's Office, 20th Floor, 219 South Dearborn Street, Chicago,
Illinois.


**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED
STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. THE
FEDERAL DISTRICT COURT HAS TAKEN NO POSITION IN THIS CASE
REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR OF DEFENDANTS'
DEFENSES. PLEASE DO NOT CALL OR WRITE THE COURT OR THE CLERK OF
THE COURT. THEY CANNOT ANSWER QUESTIONS CONCERNING THIS LAWSUIT
OR THIS NOTICE.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL VANDER VENNET, PATRICK BRACEY, LORI ESTELL, LORI LANGER, RANDY MYERS, GARY SEVERS, ERIC SKARPAC, JOHN TAMEL, KARIN ODDESN-TAYLOR, MICHAEL THRASHER, and ANGELA WHITE, and other similarly situated persons, ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 05 C 4889 |
| AMERICAN INTERCONTINENTAL UNIVERSITY ONLINE, CAREER EDUCATION CORPORATION, and STEVE FIRENG, an individual, ) ) ) ) ) | Judge William T. Hart |
| Defendants. ) | |

## NOTICE OF CONSENT TO BECOME A PARTY PLAINTIFF IN A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT

By my signature below I represent to the court that I have been employed by American Intercontinental University Online as an admissions advisor at anytime between August 24, 2002 and November 1, 2004 inclusive, and that I have worked in excess of forty (40) hours in individual workweeks, and that I believe I have not been paid all overtime wages owed to me. I authorize through this Consent the prosecution of this lawsuit in my name and on behalf of similarly-situated persons.

My name is:_____(print your name)

My address is:_____(street address)

_____ (city, state, zip code)


My telephone number is:_____


My signature:_____


Date:_____


**MAIL TO:**

AIU/CEC OVERTIME LITIGATION
c/o Robin Potter & Associates, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois   60601
312/419-1008 (phone)
312/861-3009 (fax)